IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| HARLEY T. MILLER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16-CV-314-SMY-RJD |
| | ) | |
| JOHN COE, | ) | |
| | ) | |
| Defendant. | ) | |

# **MEMORANDUM AND ORDER**

**YANDLE, District Judge:**

Plaintiff Harley Miller, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that he was provided inadequate medical care when he was incarcerated at Lawrence Correctional Center ("Lawrence"). He proceeds against Defendant Dr. John Coe on a deliberate indifference claim for his alleged failure to properly diagnose and treat Miller's complaints of abdominal pain and rectal bleeding, and concerns regarding a mass on his testicle.

Now pending before the Court is Defendant's Motion for Summary Judgment (Doc. 52). Plaintiff filed a response (Doc. 59).[1] For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Insofar as Plaintiff moves to strike Defendant's undisputed material facts for non-compliance with Federal Rule of Civil Procedure 56, his request is **DENIED**.

---

[1] Defendant filed a reply that will not be considered by the Court due to his failure to comply with the undersigned's procedures for filing the same.

## Background

Plaintiff Harley Miller was incarcerated at Lawrence from August 2013 to May 2016 (Second Amended Complaint, Doc. 46, ¶ 13). In June 2014, Miller began experiencing abdominal pain and rectal bleeding (Deposition of Harley Miller, Doc. 53-4 at 3). He was seen at nurse sick call for these complaints on June 17, 2014 (Doc. 53-1 at 1) and was referred to a doctor or nurse practitioner (*Id.*).

Miller was examined by Nurse Practitioner Phillipe on June 19, 2014 and diagnosed with epigastric pain (Deposition of Dr. Coe, Doc. 53-3 at 12-13; Doc. 53-1 at 2). Phillipe prescribed Zantac and ordered a Complete Blood Count (CBC) and an H. Pylori test (*Id.*). The H. Pylori test indicated a borderline infection and Miller was prescribed antibiotics to treat the same (Doc. 53-3 at 14; Doc. 53-1 at 3, 39-40, 43).

Dr. Coe first saw Miller for complaints of rectal bleeding on July 28, 2014 (Doc. 53-3 at 8; Doc. 53-1 at 4). He performed a physical examination and noted tenderness in Miller's right lower abdomen and anal canal (Doc. 53-3 at 8-9; Doc. 53-1 at 4). Miller's stools were black and his guaiac test (test for blood in the stool) was positive (*Id.*). Dr. Coe diagnosed Miller with an upper gastrointestinal ("GI") bleed and prescribed him Prilosec (Doc. 53-3 at 9; Doc. 53-1 at 4). Dr. Coe ruled out diverticulitis, hemorrhoids, and rectal polyps as the cause of Miller's rectal bleeding due to the color of the blood in his stools (Doc. 53-3 at 10).

Following nurse sick call visits for complaints of abdominal pain and constipation on August 1, 2014 and August 2, 2014, Miller was placed in the infirmary for observation on Dr. Coe's orders (Doc. 53-3 at 17-18; Doc. 53-1 at 5-7). Dr. Coe also gave verbal orders to issue Milk of Magnesia (a laxative and antacid used to treat constipation), and Norco (an opioid medication for moderate to severe pain) for Miller (Doc. 53-3 at 18; Doc. 53-1 at 7). Miller had

a large bowel movement on August 3, 2014 and was released from the infirmary that day (Doc. 53-3 at 19; Doc. 53-1 at 7).

Miller next saw Dr. Coe on August 19, 2014, and again complained of rectal bleeding and abdominal pain (Doc. 53-3 at 20; Doc. 53-1 at 8). Dr. Coe noted that Miller's vital signs and iron levels were normal and that his weight and blood count were stable (*Id.*). Miller had minimal rectal pain during his exam and his guaiac was negative (*Id.*). Based on his examination, Dr. Coe suspected Miller had irritable bowel syndrome ("IBS") and prescribed Bentyl, 10 milligrams, four times per day for one month (*Id.*). Dr. Coe did not address Miller's complaints of rectal bleeding in light of his negative guaiac test (*Id.*).

Miller saw Dr. Coe for a follow-up exam on September 19, 2014 (Doc. 53-3 at 21; Doc. 53-1 at 10). Dr. Coe noted that Miller was mistrustful of his medical care (*Id.*). Miller indicated that the Bentyl was effective at addressing his pain, but still complained of rectal bleeding (*Id.*). Dr. Coe found that he had a palpable mass in his left abdomen that was tender (*Id.*). He ordered a CBC, an iron profile, and Complete Metabolic Panel ("CMP") to determine if there was a drop in Miller's blood count or iron level, which would indicate blood loss (Id., Doc. 53-3 at 22). He also prescribed Bentyl, 10 milligrams, four times per day for six months, and Fiberlax (Doc. 53-3 at 21; Doc. 53-1 at 10).

Miller saw Dr. Coe again on October 15, 2014 for complaints of pain in his left lower abdomen (Doc. 53-3 at 23; Doc. 53-1 at 11). He reported that his bowel movements were normal and that the Bentyl was working, but he needed to take more than the prescribed amount to get relief (Doc. 53-3 at 23; Doc. 53-1 at 11). Dr. Coe noted that the labs ordered the previous month had not been completed, so he reordered them (*Id.*). He also increased Miller's Bentyl to 20 milligrams, three times per day for six months, and ordered an x-ray of Miller's abdomen (*Id.*).

Dr. Coe followed up with Miller on October 23, 2014 (Doc. 53-3 at 25; Doc. 53-1 at 12). Miller was experiencing continued pain in his abdomen despite reporting that the Bentyl was working. Dr. Coe noted a palpable left elongated structure in his lower left quadrant that was mildly tender when pressed (*Id.*). He determined that the elongated structure was stool in Miller's colon after a review of his abdominal x-ray, and prescribed Enulose (a laxative) to treat his constipation (Doc. 53-3 at 25; Doc. 53-1 at 14). Miller's lab results, including his hemoglobin level and iron levels, were stable (Doc. 53-3 at 25; Doc. 53-1 at 13). Dr. Coe again concluded that Miller suffered from IBS with constipation (*Id.*).

During a subsequent exam with Dr. Coe on December 16, 2014, Miller requested a consultation with a GI specialist (Doc. 53-3 at 29; Doc. 53-1 at 17). He was complaining of mild right abdominal pain with loose stools (*Id.*). Dr. Coe conducted a physical examination and again determined that Miller suffered from IBS (*Id.*). Miller was scheduled to be seen in a chronic care clinic in February 2015 for a blood draw, and Dr. Coe ordered that he undergo an H. Pylori, "sed rate", and iron level test, and a CBC during that visit (*Id.*).

On February 18, 2015, Miller was seen at nurse sick call for complaints of scrotal pain (Doc. 53-1 at 18). He indicated that the pain had been present for the last 12 days (*Id.*). The nurse noted that Miller's left testicle was tender and referred him to a doctor (*Id.*). Per the nurse's referral, Miller was seen by Dr. Coe on February 20, 2015 (Doc. 53-3 at 29; Doc. 53-1 at 19). Miller told Dr. Coe that he had suffered testicular pain since October 2014 and "put in multiple complaints" concerning the same (*Id.*). Dr. Coe reviewed Miller's chart and found no notation of any such complaints, but upon examination, noted that his left epididymis was slightly swollen and tender (*Id.*). He diagnosed Miller with epididymitis and prescribed Cipro (an antibiotic) to be taken for two weeks (*Id.*).

During a follow-up visit on February 24, 2015, Dr. Coe performed a genitourinary exam and observed that there was no more swelling (Doc. 53-3 at 30; Doc. 53-1 at 20). Based on his exam, Dr. Coe determined that Miller's epididymitis infection was improving (*Id.*). He also reviewed Miller's recent lab work, the results of which were normal (*Id.*). Miller alleges that he still had a testicular mass during this exam (Doc. 53-4 at 16).

Miller continued to complain of testicular pain during follow-up visits with Dr. Coe on March 5, 2015 and March 12, 2015 (Doc. 53-3 at 30-31; Doc. 53-1 at 21-22). After examination, Dr. Coe diagnosed subjective scrotal pain and, on March 12, 2015, placed Miller in the general medicine clinic for IBS to monitor his condition (*Id.*).

On May 4, 2015, Miller saw Dr. Coe after he told prison personnel he was bleeding from his rectum and was not being seen (Doc. 53-3 at 31; Doc. 53-1 at 23). Dr. Coe asked to complete a rectal exam, but Miller refused (*Id.*). He ordered blood tests, including a CBC, "sed" rate, and iron profile (*Id.*).

Dr. Coe saw Miller again on October 15, 2015 and December 1, 2015 and reiterated his IBS diagnosis (Doc. 53-3 at 32-34; Doc. 53-1 at 26, 32). During an exam on April 8, 2016 during which Dr. Coe was addressing a self-inflicted wound of Miller's hand, he continued to complain of abdominal pain and bloody stools (Doc. 53-3 at 34; Doc. 53-1 at 37). Dr. Coe told Miller that if he had blood in his stool, he needed to call a security officer so a guaiac test could be performed (*Id.*). Dr. Coe again prescribed Enulose (*Id.*).

Miller was transferred to Pontiac Correctional Center ("Pontiac") on April 21, 2016 (Doc. 53-1 at 38). After several encounters with medical personnel at Pontiac, Miller was scheduled for an upper GI endoscopy that was performed on September 30, 2016 (Doc. 53-2 at 6-8). Dr. Matter, the outside physician who performed the endoscopy, advised Dr. Tilden at Pontiac that the test revealed mild gastritis, but opined it was not significant enough to explain multiple

months of melena (blood in the stool) (*Id.* at 9). Dr. Matter suggested colonoscopy as the next step to evaluate Miller's left lower quadrant discomfort and melena (*Id.*).

Miller underwent a colonoscopy on October 28, 2016 (Doc. 53-3 at 38; Doc. 53-2 at 4-5). The colonoscopy revealed that Miller suffered from diverticulosis in the rectum and sigmoid. Dr. Matter recommended that Miller take a fiber supplement (*Id.*).

On February 7, 2017, Miller underwent a testicular ultrasound (Doc. 53-3 at 40; Doc. 53-1 at 41). The ultrasound revealed 8 mm cysts within the epididymis adjacent to the inferior poles on the right and left testes (*Id.*). In his deposition, Dr. Coe testified that this was not a finding of testicular cancer and such condition is not documented in Miller's medical records (Doc. 53-3 at 40). However, Miller testified that Dr. Tilden told him he had testicular cancer on February 2, 2017, before the ultrasound, but did not record this diagnosis in his medical records (Doc. 53-4 at 2-3, 22).

## Discussion

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the

light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. Const., amend. VIII; *see also Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). As the Supreme Court has recognized, "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, the plaintiff must first show that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted).

The following circumstances are indicative of an objectively serious medical condition: "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie Cnty.,* 394 F.3d 510, 512-13 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

An inmate must also show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. In other words, the plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. A plaintiff does not have to prove that his complaints were "literally ignored," but only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants

intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987).

Dr. Coe first argues that Miller does not have testicular cancer and he was therefore not deliberately indifferent in failing to diagnose and treat the same. Miller concedes that no medical records show a diagnosis of testicular cancer, but maintains that Dr. Tilden told him he had testicular cancer on February 2, 2017. Assuming Dr. Tilden made such a statement, it was made before an ultrasound revealed that Miller suffered from epididymal cysts, which, according to Dr. Coe's sworn affidavit, are not cancerous. Miller has provided no evidence to rebut Dr. Coe's testimony and opinions.

Dr. Coe further argues that even if epididymal cysts constitute a serious medical condition, he was not deliberately indifferent in treating the same; he diagnosed Miller with epididymitis in February 2015, and prescribed antibiotics to treat the condition. Dr. Coe conducted follow-up examinations that revealed reduced swelling, and noted that Miller only had subjective complaints of testicular pain.

It is not clear what, if any, treatment was recommended or provided for Miller's epididymal cysts at Pontiac. Moreover, it is not apparent from the record that epididymal cysts qualify as a serious medical need, and Plaintiff makes no argument concerning this issue. On this evidence, no reasonable jury could conclude that Dr. Coe was deliberately indifferent in treating Miller's complaints of testicular pain. Thus, he is entitled to summary judgment on this issue.

Miller also contends that Dr. Coe was deliberately indifferent in failing to diagnose his diverticulosis[2]. In support of this argument, Miller points to Dr. Coe's failure to order a colonoscopy and to correctly diagnose his condition despite Miller making repeated complaints of rectal bleeding and stomach pain for over two years. The record demonstrates that Dr. Coe regularly examined Miller to address his complaints and ordered various tests, including blood tests and an x-rays, to continually assess his condition. Based on his assessments, Dr. Coe diagnosed Miller with IBS and treated him for this condition. Dr. Coe's treatments included dispensation of Bentyl for pain, as well as various laxatives and fiber supplements to address constipation.

Summary judgment in Dr. Coe's favor is warranted because there is no evidence that he knew of and disregarded the risk of diverticulosis. Rather, the record supports a finding that Dr. Coe thoroughly investigated Miller's complaints and used his medical judgment in arriving at a diagnosis of IBS. Miller has not presented evidence from which a reasonable jury could conclude that Dr. Coe's treatment or conduct was "so far afield of accepted professional standards as to raise the inference that it was not actually based on medical judgment." *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006). Although Dr. Coe did not refer Miller to an outside physician for a colonoscopy, the decision to forego such diagnostic testing is "a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. Finally, the colonoscopy that was ultimately completed revealed only a diagnosis of diverticulosis, and led to a recommendation for Miller to use fiber, which he had already been provided on various occasions by Dr. Coe.

---

[2] Miller incorrectly states that he was diagnosed with diverticulitis throughout his response brief. The record does not support such diagnosis. Rather, Miller's colonoscopy indicated "diverticulosis in the rectum and in the sigmoid colon" (Doc. 53-2 at 4). Miller has not pointed to any evidence challenging this finding or supporting a finding that he was diagnosed with diverticulitis. As Dr. Coe testified to at his deposition, diverticulosis occurs when an individual develops pouches in their colon. If these pouches become infected or inflamed, the condition is known as diverticulitis (Doc. 53-3 at 35).

Because no reasonable jury could conclude that Dr. Coe's actions were "blatantly inappropriate," he is entitled to summary judgment on Miller's deliberate indifference claim.

## Conclusion

For the reasons stated above, the Motion for Summary Judgment filed by Dr. Coe (Doc. 52) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment against Plaintiff Harley Miller and in favor of Dr. John Coe.

**IT IS SO ORDERED.**

**DATED: May 22, 2018**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**